**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**JAMES P. MORRISSEY**,

Plaintiff,

v.

**MARKWAYNE MULLIN,**

Defendant.

No. 25-cv-1297 (TSC)

---

**MEMORANDUM OPINION**

*Pro se* Plaintiff James P. Morrissey alleges that his employer, the Department of Homeland Security ("DHS"), failed to reasonably accommodate him after he underwent surgery, and otherwise retaliated against him for his complaints about "the corruption that persists within DHS." Compl. ¶¶ 70, 74, 78, ECF No. 1. Defendant Markwayne Mullin, the Secretary of Homeland Security, now moves to dismiss. *See* Def.'s Mot. to Dismiss, ECF No. 5 ("Def.'s MTD"). Because Plaintiff has failed to state any claims, the court will GRANT the Motion.

## I.    LEGAL STANDARDS

For purposes of resolving the Motion to Dismiss, the court assumes the truth of the Complaint's factual allegations and draws all reasonable inferences in Plaintiff's favor. *See Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 26 F.4th 960, 970 (D.C. Cir. 2022). The court may also consider any document attached to or incorporated in the Complaint. *See N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1249 (D.C. Cir. 2020). Because Plaintiff is proceeding *pro se*, his Complaint is construed liberally. *See Saha v. Geo. Wash. Univ.*, 594 F. Supp. 2d 28, 29 (D.D.C. 2009). "[B]ut even a *pro se* complaint must contain sufficient factual matter,

1

accepted as true, to state a claim for relief that is 'plausible on its face.'" *Davis v. Sarles*, 134 F. Supp. 3d 223, 226 (D.D.C. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although factual allegations are presumed to be true" at the pleading stage, legal conclusions are not. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Mere conclusory statements," moreover, "do not suffice." *Iqbal*, 556 U.S. at 678 (cleaned up).

## II.    BACKGROUND

Plaintiff has worked as a Special Agent at DHS since November 1999. Compl. ¶ 7. In 2023, at the time of the events forming the basis of his current claims, Plaintiff was assigned to Homeland Security Investigations Tampa ("HSI Tampa"). Compl. Ex. A at 2, ECF No. 1-1 (Final Agency Decision). According to the position description, Plaintiff's job was a "physically rigorous" one involving "extensive" travel and "the physical apprehension, search, arrest, and transport of criminal suspects." *Id.* at 3. It required the ability to use physical force in the apprehension of criminal suspects. *Id.*

In September 2018, another driver rear-ended the government vehicle that Plaintiff was operating. Compl. ¶ 6. As a result of this work-related crash, Plaintiff suffered a spinal neck injury that initially went undetected. *Id.* ¶ 11. On April 3, 2023, Plaintiff took paid medical leave to undergo major spinal surgery. *Id.* ¶ 10; Compl. Ex. A at 3. On May 3, he phoned his supervisor, David Loerzel, requesting a reasonable accommodation; that same day, Plaintiff also emailed Loerzel a doctor's note. Compl. ¶¶ 12–13. The note explained that Plaintiff could not return to work until at least July 7, but depending on his doctor's reevaluation, could potentially commence light duty at that point. *See id.* ¶¶ 13, 15–16. Loerzel replied that HSI Tampa did not have any light-duty assignments. *Id.* ¶ 14. Plaintiff remained on approved paid leave, though he

2

was required to use accrued leave.  Compl. Ex. A at 4; *see also* Compl. ¶ 40; Pl.'s Opp'n at 7, ECF No. 7.

On July 19, Loerzel acknowledged that Plaintiff "still [had] complications with [his] recovery," noting that he had not seen "a new note" from Plaintiff's doctor.  Compl. ¶ 15. Plaintiff replied that when he saw his doctor for a reevaluation on July 7, the doctor "said I still can not go back to work because I am not healing." *Id.* ¶ 16.  The doctor stated that Plaintiff was "100% disabled not cleared to return back to work," and indicated that the soonest Plaintiff could return to work would be October 2023 in a light-duty position.  Compl. Ex. A at 3.  The doctor explained that any light-duty assignment could not involve any strain on his neck, any physical contact with people, and any travel apart from a short commute.  *Id.*  But Plaintiff went on to tell Loerzel—inconsistent with his doctor's opinion—"I can go back to work, but Tampa does not provide a reasonable accommodation while I am potentially recovering."  Compl. ¶ 16.  Plaintiff asked whether DHS was denying him an accommodation "because I filed a lawsuit" separate from this one. *Id.*  This is Plaintiff's fifth federal lawsuit against DHS. *Id.* ¶ 78.

At some point, Plaintiff also filed a claim with the Office of Workers' Compensation Programs ("OWCP"). *See* Compl. ¶¶ 22, 24.  In early October, a DHS official informed Plaintiff that workers' compensation officials were still awaiting a medical exam report, but that Plaintiff could receive a reasonable accommodation "separate and apart" from his workers' compensation claim while that claim was pending. *Id.* ¶ 24.  Shortly thereafter, Loerzel began an "interactive process" with Plaintiff to determine an appropriate light-duty assignment. *Id.* ¶ 27; *see also* Compl. Ex. A at 4.

On November 3, DHS approved Plaintiff to return to HSI Tampa for a light-duty assignment effective November 6.  Compl. Ex. A at 4.  Plaintiff requested, and received, a later

report date of November 13, and he ultimately returned to work on either that day or November 14. *Id.*; *see also* Compl. ¶ 40. Plaintiff remained on paid leave between April 3, 2023, and his return to light duty on November 13 or 14. Compl. Ex. A at 4; *see also* Compl. ¶ 40. On November 14, Resident Agent in Charge John Yancey temporarily suspended Plaintiff's authorization to carry a firearm and badge because of "a medical condition that may impede the safe and effective use of a firearm." Compl. Ex. A at 4–5. Yancey informed Plaintiff that "[d]uring this temporary suspension, you will be provided with work that is administrative in nature and does not require that you be armed," and that the suspension would be lifted once DHS received "acceptable documentation which supports you are able" to safely handle a firearm. *Id.* at 5. In February 2024, Plaintiff's doctor determined that Plaintiff was able to return to full duty with no restrictions, and Plaintiff was restored to full duty and reissued his badge and firearm. *Id.*

Separately, in December 2023, Plaintiff's EEO counseling concluded, and Plaintiff filed an EEO complaint. Compl. ¶¶ 58–59. The agency investigated. *Id.* ¶¶ 60–62. In January 2025, DHS's Office for Civil Rights and Civil Liberties issued a Final Agency Decision denying Plaintiff's claims of discrimination. *See generally* Compl. Ex. A; *see also* Compl. ¶ 66. In April 2025, Plaintiff filed this lawsuit asserting two claims. In Count One, he alleges that Defendant failed to reasonably accommodate him in violation of the Rehabilitation Act and Executive Order 13,164. Compl. ¶¶ 67–73. In Count Two, he asserts that Defendant retaliated against him in violation of 42 U.S.C. § 2000e et seq. *Id.* ¶¶ 74–80. Plaintiff seeks $25 million in damages. *See* Compl. – Prayer for Relief ¶ 3.

### III.   ANALYSIS

#### a. Reasonable Accommodation

The Rehabilitation Act "protects" federal employees "according to the same standards applied under the Americans with Disabilities Act." *Ali v. Regan*, 111 F.4th 1264, 1268 (D.C. Cir. 2024) (cleaned up).[1]  To that end, the Rehabilitation Act requires federal employers to implement reasonable accommodations for their disabled employees.  See *id.*  If a federal employer fails to do so, the aggrieved employee "may sue."  *Id.*  "To prevail, [the] employee must allege and prove that: (1) he is disabled, (2) his employer had notice of the disability, and (3) the employer denied his request for a reasonable accommodation."  *Id.* at 1268–69 (citing *Stewart v. St. Elizabeth's Hosp.*, 589 F.3d 1305, 1307–08 (D.C. Cir. 2010)).  Plaintiff's claim founders on the third element.  He cannot allege that DHS "denied his request for a reasonable accommodation," *id.*, because DHS provided him paid leave while he was unable to work, and a light-duty assignment until he could return to full duty.

An accommodation is reasonable if it "allow[s] an employee to perform the essential functions of the job, without imposing undue hardship on the employer."  *Saunders v. Galliher & Huguely Assocs.*, 741 F. Supp. 2d 245, 249 (D.D.C. 2010).  That does not mean, however, that the accommodation must allow the employee to perform those functions without any interruption whatsoever.  *See Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999) (a plaintiff's "inability to work during the leave period would not automatically render" leave unreasonable).  Federal courts have recognized a temporary "leave of absence as a reasonable accommodation" when it allows the employee to recover from his disability such that he can

---

[1]  Because the Rehabilitation Act incorporates the ADA's standards, ADA cases "are applicable" to Rehabilitation Act claims.  *Montgomery v. McDonough*, 682 F. Supp. 3d 1, 14 (D.D.C. 2023) (quoting *Alston v. WMATA*, 571 F. Supp. 2d 77, 81 (D.D.C. 2008)).

"perform his essential job functions in the near future."  *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 151 (3d Cir. 2004).  In other words, "leave may be reasonable where the disability that interferes with an employee's capacity to complete assigned tasks is temporary and there is reason to believe that a leave of absence will provide a period during which the employee will be able to recover and return to work."  *Hannah v. United Parcel Serv., Inc.*, 72 F.4th 630, 637 (4th Cir. 2023); s*ee also Criado v. IBM Corp.*, 145 F.3d 437, 444 (1st Cir. 1998) (temporary leave was a reasonable accommodation where it allowed plaintiff time to treat her disability so she could return to performing her job duties).  Leave thus functions as a temporary adjustment to the job, "similar" to a "modified work schedule[]."  42 U.S.C. § 12111(9).  "Even an extended medical leave . . . may be a reasonable accommodation if it does not pose an undue hardship on the employer."  *Dark v. Curry Cnty.*, 451 F.3d 1078, 1090 (9th Cir. 2006) (quoting *Nunes*, 164 F.3d at 1247); *see also Hancock v. Wash. Hosp. Ctr.*, 13 F. Supp. 3d 1, 11 (D.D.C. 2014) ("[A] leave of absence may constitute a reasonable accommodation[.]"); *Hankins v. The Gap, Inc.*, 84 F.3d 797, 801 (6th Cir. 1996) ("The EEOC specifically mentions the use of paid and unpaid leave as a potential form of reasonable accommodation[.]").

Applying those principles here, it is undisputed that DHS allowed Plaintiff to take paid leave from April 3, 2023 (the day he left for surgery) until November 13 or 14 (the day he returned to light duty).  *See* Pl.'s Opp'n at 3–4; *see also* Compl. ¶ 40; Compl. Ex. A at 4.  That accommodation was reasonable because it gave Plaintiff time to undergo and recover from surgery before returning to the performance of his duties.

Plaintiff contends that paid leave was not a reasonable accommodation, and that DHS should have placed him on light duty instead.  Pl.'s Opp'n at 3.  The court disagrees.  Paid leave is an accommodation that employees ordinarily seek and employers resist as too costly or

disruptive to their businesses.  *See Dark*, 451 F.3d at 1090.  The court is aware of no case where an employee has complained about receiving an accommodation that provides them with full pay and benefits while they receive needed treatment.

Although Plaintiff complains that he was required to use accrued leave during this period, *see* Pl.'s Opp'n at 7, that does not render the accommodation unreasonable because even *fully unpaid* leave can be reasonable.  *See, e.g.*, *Hannah*, 72 F.4th at 636–37 (holding that even unpaid leave was a reasonable accommodation under the circumstances even though it "prevented [the plaintiff] from earning his wages" (cleaned up)).  Beyond the use of accrued leave, there is no indication that paid leave otherwise disadvantaged Plaintiff relative to light duty.  Plaintiff nowhere alleges, for example, that paid leave cost him a career opportunity or arrested his professional development.

More fundamentally, Plaintiff's own doctor believed that Plaintiff was not cleared for light duty, and so even if DHS had offered him a light-duty assignment, he could not have safely performed it until at least October.  Compl. Ex. A at 3.  Specifically, the Complaint and the attached document establish that Plaintiff's physician said he could not return to work until he was reevaluated on July 7.  Compl. ¶ 16.  At that reevaluation, the physician deemed Plaintiff still "100% disabled not cleared to return back to work" and indicated that the earliest he could return to even a light-duty assignment was six months after surgery, *i.e.*, October.  Compl. Ex. A at 3; *see also* Compl. ¶ 16 (Plaintiff's doctor told him on July 7 that "I still can not go back to work because I am not healing").  Plaintiff's contrary assertion that he could return to work in May or July, *see* Compl. ¶¶ 13, 16, is therefore not plausible because his own doctor's opinion squarely contradicts it.  Compl. Ex. A at 3; Compl. ¶ 16; *see also Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004).  In any event, because Plaintiff was unable to show DHS that he was

medically cleared to perform even light duty, DHS could not have reasonably provided him a light-duty assignment. DHS was not required to credit Plaintiff's assertions over Plaintiff's own doctor who had not cleared him to return to light duty. And indeed, promptly after light duty became a viable option, DHS approved Plaintiff's return effective November 6, and it was Plaintiff who requested to delay his start date. *See* Compl. Ex. A at 4; *see also* Compl. ¶ 40.

Even assuming light duty was available earlier, Plaintiff's preference for that accommodation does not change the equation. "An employer is not required to provide an employee that accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998) (cleaned up); *see also Ali*, 111 F.4th at 1269 ("An employer fully satisfies its statutory obligation by offering an accommodation that is reasonable, even if it is not the one preferred by the employee."); *Hannah*, 72 F.4th at 636 ("[I]t is well settled that the ultimate discretion to choose among reasonable accommodations rests with the employer." (cleaned up)). DHS fully satisfied its obligations by providing Plaintiff paid leave that allowed him to undergo and recover from surgery, and Plaintiff cannot defeat the reasonableness of this accommodation merely because it was not the best option for him or the option he preferred. His reasonable accommodation claim therefore fails.

To the extent Plaintiff claims a violation of Executive Order 13,164, that claim is not actionable. "An Executive Order devoted solely to the internal management of the executive branch—and one which does not create any private rights—is not, for instance, subject to judicial review." *Meyer v. Bush*, 981 F.2d 1288, 1296 n.8 (D.C. Cir. 1993). Executive Order 13,164 "not only fail[s] to expressly authorize private actions against the government to enforce [it]," but "expressly state[s] that [it is] not intended to create privately enforceable rights."

8

*Savage v. Burwell*, No. 15-cv-791, 2016 WL 4132196, at *3 (D.D.C. Aug. 3, 2016); *see also* Exec. Order No. 13,164, 65 Fed. Reg. 46565, § 5(b) (July 26, 2000) ("This order is intended only to improve internal management of the executive branch and does not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States[.]").

Plaintiff separately alleges that DHS treated him less favorably than other disabled employees, asserting that "Defendant has provided reasonable accommodation to other employees" but not to him. Compl. ¶ 71. In his Complaint, Plaintiff concedes that he cannot presently identify those employees and instead rests his disparate treatment claim on his "reasonable suspicion of such discrimination" because there is "no other logical explanation" for Defendant's failure to provide a light-duty assignment before November. *Id.* ¶ 72. In his Opposition, Plaintiff offers a single, unnamed comparator—"another employee in the same DHS office location . . . was permitted to return to work with reasonable accommodation, while recovering from injuries without having to take annual and sick leave as the plaintiff did." Pl.'s Opp'n at 7. But although the burden at the pleading stage is "not onerous," Plaintiff must still allege "that a comparator was similarly positioned to [him] in at least some relevant respects, and include[] enough detail" for the court to "plausibly infer that discrimination caused the defendant's differential treatment of the plaintiff." *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 531–32 (D.C. Cir. 2025) (cleaned up). Plaintiff's allegations fail to clear even this low bar. In his Complaint, he alleges no facts identifying those comparators or the circumstances of their accommodations, and his bare "suspicion" of differential treatment is the sort of "naked assertion devoid of further factual enhancement" that courts must reject. *Iqbal*, 556 U.S. at 678 (cleaned up). The single, unnamed comparator in his Opposition likewise fails because Plaintiff does not allege that this comparator occupied a comparable position or had the same medical

9

incapacity that rendered Plaintiff ineligible for light duty.  Plaintiff's disparate treatment theory therefore cannot survive the pleading stage, and Count One will be dismissed.

### b. Retaliation

The Complaint also contains a Title VII retaliation claim.  Although Defendant moved to dismiss that claim, *see* Def.'s MTD at 13–17, Plaintiff's entire Opposition focused on the issue of reasonable accommodation and did not respond to Defendant's retaliation arguments.  *See generally* Pl.'s Opp'n at 1–12.  The court specifically "warned" Plaintiff that if he "submits an opposition but fails to address each of Defendant's arguments in his opposition, the court may treat as conceded any arguments which were not addressed."  *See* Order at 1–2, ECF No. 6.  "It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."  *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003); *see also Glass v. LaHood*, 786 F. Supp. 2d 189, 210 (D.D.C. 2011) (same).  Because Plaintiff failed to address Defendant's arguments for dismissing the retaliation claim, the court will treat dismissal of that claim as conceded.

In any event, Plaintiff fails to state any retaliation claim under Title VII or otherwise.  To start, "Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin."  *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 305 (2025).  "Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee because the employee 'opposed any practice' made unlawful *by Title VII* or 'made a charge, testified, assisted, or participated in' *a Title VII* proceeding or investigation."  *Clemmons v. Academy for Educ. Dev.*, 107 F. Supp. 3d 100, 128 (D.D.C. 2015) (quoting *Manuel v. Potter*, 685 F. Supp. 2d 46, 65 (D.D.C. 2010)) (emphasis added).  Most of Plaintiff's alleged protected

10

activity is *disability* based, not based on what Title VII encompasses (race, color, religion, sex, or national origin). Thus, Plaintiff's protected activity claim is more properly rooted in the Rehabilitation Act, which "bars employers from retaliating against employees who lodge complaints of discrimination" based on disability. *Belton v. Snyder*, 249 F. Supp. 3d 14, 26 (D.D.C. 2017) (citing *Smith v. District of Columbia*, 430 F.3d 450, 454–55 (D.C. Cir. 2005)). Nevertheless, the standards for a retaliation claim under Title VII mirror the standards for a retaliation claim under the Rehabilitation Act. *Id.*; *see also Walker v. Child.'s Nat'l Med. Ctr.*, 236 F. Supp. 3d 136, 144 (D.D.C. 2017). To make out either claim, Plaintiff must allege that "(1) he engaged in a statutorily protect[ed] activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two." *Belton*, 249 F. Supp. 3d at 26 (quoting *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)). Regardless of what statute applies, Plaintiff has not adequately pleaded these elements.

First, Plaintiff alleges that DHS retaliated against him for a complaint he made in 2010 to a Senator's office "about the corruption that persists within DHS" and alleged mishandling of sexual assault investigations. Compl. ¶¶ 74–75. Specifically, in 2011, a Special Agent in Charge looked at Plaintiff and said, "So you are the one" who complained to the Senator's office. *Id.* ¶ 76. Plaintiff replied, "Yes, I am the one, the one whose parents did their job, I am the one opposed to women being punched in the face, clothes ripped from their bodies, raped, punched in the face again, then told, tell whoever you want, who would believe the word of a n***er over a white man." *Id.* ¶ 77. Plaintiff alleges that ever since "the cowards that infest DHS management . . . have continuously retaliated against" him. *Id.* (cleaned up). But any retaliation that stems from these events is not actionable under either Title VII or the Rehabilitation Act. Although Plaintiff may have complained about how DHS agents treated members of the public who were

11

women and people of color, about the mishandling of sexual assault investigations, and agency

"corruption" more broadly, that is not protected activity under either statute.  Both statutes

protect only an employee's opposition to discriminatory *employment* practices.  *See Logan v. City*

*of Chicago*, 4 F.4th 529, 539 (7th Cir. 2021) (explaining that "Title VII is not a general bad acts

statute," but rather specifically "prohibits an employer from retaliating against an employee from

opposing an unlawful employment practice," not for opposing the "discrimination or harassment

of non-employees" (cleaned up)).  Plaintiff, by contrast, complained about law enforcement

misconduct toward the public.  Neither Title VII nor the Rehabilitation Act extends to such

matters, however serious the underlying allegations.  *See Wimmer v. Suffolk Cnty. Police Dep't*,

176 F.3d 125, 135 (2d Cir. 1999) (Plaintiff's "claim of retaliation is not cognizable under Title

VII because" his complaints "that certain members of the Department had acted in a

discriminatory manner toward the public" was not "opposition . . . directed at an unlawful

*employment practice* of his employer." (emphasis in original)); *see also Crowley v. Prince*

*George's Cnty.*, 890 F.2d 683, 687 (4th Cir. 1989) ("While Congress may decide to extend [Title

VII's] coverage to persons who bring any discriminatory practice . . . to light . . . such a step lies

beyond the province of the courts.").

Plaintiff next alleges that DHS retaliated against him for filing various EEO complaints

and an earlier civil action against DHS alleging violations of the ADA and Rehabilitation Act.

*See* Compl. ¶¶ 16, 78–80.  This likely constitutes protected activity, but Plaintiff's retaliation

claim nevertheless fails at the second and third elements.  Construing his Complaint liberally, it

appears that Plaintiff alleges that DHS retaliated by (1) filing "false affidavit[s]" disputing his

claims in federal court, *see id.* ¶¶ 79–80; (2) denying him light duty between May and November

2023, *see id.* ¶ 16; and (3) temporarily suspending his ability to carry a firearm and badge until

he was fully cleared by his doctor, *see* Compl. Ex. A at 4–5.  But the first allegation does not rise to the level of a materially adverse action, and Plaintiff has not plausibly alleged that "his protected activity was a but-for cause of" the latter two actions.  *Ho v. Garland*, 106 F.4th 47, 51 (D.C. Cir. 2024); *see also Cooper v. District of Columbia*, 279 F. Supp. 3d 156, 164 (D.D.C. 2017) ("Retaliation claims must be proved according to traditional principles of but-for causation meaning that the adverse action would not have occurred absent the retaliatory motive." (cleaned up)).

First, a challenged action must be "materially adverse."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  This requirement of "*material* adversity . . . separate[s] significant from trivial harms."  *Id.* (emphasis in original).  The challenged action must be significant enough that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.* (cleaned up).  "Typically, a materially adverse action in the workplace involves 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'"  *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)).  Submitting allegedly false affidavits to oppose Plaintiff's earlier lawsuit does not clear this bar.  Defending against litigation—including by submitting declarations a plaintiff believes to be incorrect—is ordinary adversarial conduct, not the kind of retaliatory act that would dissuade a reasonable worker from making a charge of discrimination.  A plaintiff's disagreement with the veracity of litigation documents is a matter to be handled during that litigation, not an independently actionable act of retaliation.

Second, Plaintiff has failed to allege that retaliation was the but-for cause of the other challenged actions. Plaintiff's "own pleadings raise—and then offer nothing to rebut—at least one alternative explanation" for why Defendant denied him a light-duty assignment and then suspended his ability to carry a firearm and badge when he returned to light duty until he was cleared by his doctor in February 2024. *Joyner*, 140 F.4th at 534. As discussed above, Plaintiff's doctor indicated that Plaintiff was still disabled and unable to return to even light duty until at least October 2023, and Plaintiff did not submit medical documentation fully clearing him for light duty until February 2024. It is more than reasonable to infer that Defendant thus denied him light duty and suspended his badge and gun not to punish him, but because he had not demonstrated that he was medically cleared to work and to safely carry a firearm. "That 'obvious alternative explanation' . . . confirms that [retaliation] is not a plausible inference." *Id.* (quoting *Ho*, 106 F.4th at 54). In sum, Plaintiff's naked assertions of retaliatory motive fail to sustain his retaliation claim.

Finally, Plaintiff's passing references to a "hostile work environment" and "prolonged harassment" are insufficient to plead a retaliatory hostile work environment claim. Compl. ¶ 78; *id.* – Prayer for Relief ¶ 3. Even liberal *pro se* pleading standards do not require the court to construct a claim Plaintiff did not meaningfully plead. *See Leisure v. Hogan*, 21 F. App'x 277, 278 (6th Cir. 2001) ("The less stringent standard for pro se plaintiffs does not compel courts to conjure up unpleaded facts to support conclusory allegations."). Plaintiff nowhere pleads facts showing "discriminatory intimidation, ridicule and insult of such severity or pervasiveness as to alter the conditions of . . . employment and create an abusive working environment." *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006) (cleaned up). At most, Plaintiff alleges one encounter with his supervisor in November 2023 in which his supervisor held "both his hands on

14

top of his firearms and twist[ed] and turn[ed] his body," questioning Plaintiff "can you do this, can you do this?"  Compl. ¶ 39.  A supervisor asking an agent who recently returned from surgery and who had not been medically cleared whether he could safely handle a firearm is hardly the sort of severe or pervasive conduct that could support a hostile work environment claim.  In any event, this claim would founder on causation for the same reasons discussed above:  Plaintiff's own pleadings supply an obvious, non-retaliatory explanation for why DHS officials were concerned about his capacity to handle a gun.

## IV.   CONCLUSION

For the foregoing reasons, the court will GRANT Defendant's Motion to Dismiss, ECF No. 5.  A separate order will follow this opinion.


Date:  July 13, 2026


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

15